UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-22222-CIV-MARRA

In re:

Paul G. Mouttet, a/k/a Gerry Mouttet,

　　　　Debtor.
_____/

TALISMAN CAPITAL ALTERNATIVE
INVESTMENTS FUND, LTD., a British Virgin
Islands international business company and
workout lender; and EGE LTD., a British
Virgin Islands international business company and
special purpose vehicle to own shares of stock,

　　　　Plaintiffs/Objectors/Appellants,
vs.

PAUL GERARD ("GERRY") MOUTTET, a U.S. citizen
and a citizen of Trinidad, and a Debtor pursuant to
Chapter 7 of the U.S. Bankruptcy Code, *et al.,*

　　　　Defendants/(Appellee),
and

INTRALOT ST. LUCIA LIMITED, a St. Lucia business
entity; *et al.,*

　　　　Relief Defendants.
_____/

## ORDER ON BANKRUPTCY APPEAL

　　　　Appellants Talisman Capital Alternative Investments Fund, Ltd. ("Talisman")

and EGE Ltd. ("EGE") (together, "Appellants") filed this bankruptcy appeal

challenging an order issued by Judge Laurel M. Isicoff, in Bankruptcy Case No. 12-

01842-BKC-LMI and 12-14490-BKC-LMI ("the Order"), which dismisses six core, non-

dischargeability claims (Counts XIX through XXIV) of Appellants' Complaint (some with leave to amend, others with prejudice).  The Bankruptcy Court also recommends that the District Court dismiss the 18 non-core, dischargeable claims, also some with leave to amend, others with prejudice (Counts I to VI alleging violations of federal and Florida RICO statutes, Counts VII to XVIII alleging other Florida statutory and common law tort claims).  *See* DE 1 at 43 of 81, n.4.  Lastly, the Order recommends that the Relief Defendants be dismissed from the case with prejudice.  The Court has carefully considered the briefs, the entire Court file, and the argument of the parties.  For the reasons that follow, the Court affirms in part, and reverses in part, the decision of the Bankruptcy Court.[1]

## Jurisdiction

Before addressing the parties' arguments, the Court must consider its jurisdiction.  Under 28 U.S.C. § 1334(b) and the district court's order of reference, this Court has jurisdiction over all civil proceedings arising under Title 11, or arising in or related to cases under Title 11.  Plaintiffs' claims in this adversary proceeding arise under or allegedly relate to their bankruptcy cases and thus fall within the Court's broad jurisdiction.  Whether the Bankruptcy Court can finally resolve the parties' disputes requires further analysis.

Subject to constitutional limitations, a bankruptcy court can enter final orders

---

[1]  The Court apologizes to the parties, the attorneys and the Bankruptcy Court for the unjustified delay in deciding this appeal.

only on "core" bankruptcy claims.  *See* 28 U.S.C. § 157.  For "non-core" proceedings,

the bankruptcy court is not authorized to enter final orders unless all parties consent.

*Id*.  As the Supreme Court has explained,

> If a matter is core, the statute empowers the bankruptcy judge to enter
> final judgment on the claim, subject to appellate review by the district
> court. If a matter is non-core, and the parties have not consented to
> final adjudication by the bankruptcy court, the bankruptcy judge must
> propose findings of fact and conclusions of law.  Then, the district court
> must review the proceeding *de novo* and enter final judgment.

*Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014).

"It is the bankruptcy court's responsibility to determine whether each claim

before it is core or non-core."  *Id*. at 33.  "A proceeding is core under section 157 if it

invokes a substantive right provided by title 11 or is a proceeding that, by its nature,

could arise only in the context of a bankruptcy case."  *Barnett v. Stern*, 909 F.2d 973,

981 (7th Cir. 1990) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).

"Core proceedings are actions ... that arise under the Bankruptcy Code in the

strong sense that the Code itself is the source of the claimant's right or remedy,

rather than just the procedural vehicle for the assertion of a right conferred by some

other body of law."  *In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir.

1997) (debtor's claimed right to insurance coverage was non-core because, in part,

such right is "a creation of state contract law" and "vindicated in an ordinary breach

of contract suit").  A "non-core" proceeding, on the other hand, is one in which the

plaintiff does "not invoke a substantive right created by the federal bankruptcy law

and is one that could exist outside of bankruptcy ... it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding." *Barnett v. Stern*, 909 F.2d at 981 (quoting *In re Wood*, 825 F.2d at 97) (emphasis in original).

**Standard of Review**

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. *In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir.1994). Upon entry of a final order by the bankruptcy court, a party may appeal to the district court pursuant to 28 U.S.C. § 158(a). This Court reviews *de novo* the legal conclusions of the bankruptcy court. *In re JLJ, Inc.*, 988 F.2d 1112, 1116 (11th Cir.1993); *In re Bilzerian*, 100 F.3d 886, 889 (11th Cir. 1996).

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Also, Rule 10(b) requires that a party "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b); *Kennedy v. Bell S. Telecommunications, Inc. (AT & T)*, 546 F. App'x 817, 819-20 (11th Cir. 2013). A proper complaint "will present each claim for relief in a separate count, as required by Rule 10(b), and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming." *Anderson v. Dist. Bd. of Tr. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996); *Cesnick v. Edgewood Baptist Church*, 88 F.3d 902, 905-07 (11th Cir.

1996) (dismissing a "shotgun" pleading framed in complete disregard of the principle that separate causes of action should be plead in separate counts."). The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570).

**Introduction to the Complaint**

Appellants (Plaintiffs below) are "Talisman, the Assignee of Lender," and "EGE, a special purpose vehicle ("SPV"), created by Lender and its Florida Decision Maker, to hold a 17% . . . ownership interest in SVL, a Jamaican public company, which holds the license to operate the only lottery in Jamaica." DE 11 at 10 of 49 (citations omitted). Plaintiffs state they have "sued 31 defendants, individually, and as co-conspirators, seeking recovery of approximately $100 million in compensatory damages, which resulted from Defendants' . . . schemes to defraud and otherwise steal cash, collateral, stock, and dividends and other property rights." DE 11 at 11 of 49.

Appellants disagree with the Bankruptcy Court's characterization of the

dispute presented by the Complaint.  Accordingly, in an attempt to give a sense of

the dispute presented by this case, the Court quotes the Complaint's first two

paragraphs:

> 1.     This Complaint alleges a vast intentional scheme and conspiracy
> to defraud and otherwise steal tens of millions of dollars, collateral,
> and/or other valuable personal property separately from each of the
> Plaintiffs, which illegal scheme was devised and masterminded by
> Defendant Paul Gerard ("Gerry") Mouttet ("Mouttet"), and members of
> his immediate and extended family (hereinafter, collectively, "The
> Mouttet Family Criminal Enterprise" and/or "The Mouttet Family Florida
> Criminal Enterprise").  This Florida-based conspiracy involved numerous
> and continuous acts perpetrated in this District by, and/or at the behest
> of Mouttet, who elicited his father, brother, uncle, and other relatives,
> friends, and business associates in this District to assist him in
> perpetrating this massive fraud. In addition, this illicit scheme also
> involved other persons and entities in other countries, which all acted at
> the express direction and bidding of Mouttet, who controlled their, and
> the other members of The Mouttet Family Criminal Enterprise's and The
> Mouttet Family Florida Criminal Enterprise's actions (as well as the SVL
> Enterprise and/or the SVL Florida Enterprise, as defined and alleged,
> below), from Florida, in this District.

> 2.     To accomplish his separate thefts of tens of millions of dollars of
> personal property from each Plaintiff, Mouttet used his ownership and
> control of a gaming and lottery company in Jamaica, Defendant
> Supreme Ventures Limited, a/k/a Supreme Ventures Ltd. ("SVL"), and
> other related entities, to separately lure each of the Plaintiffs to enter
> into a series of separate commercial transactions. Ultimately, as
> Plaintiffs now know, beginning in or about 2004 or 2005, Mouttet plotted
> and conspired with his fellow Directors at SVL, Defendants Paul Hoo
> ("Hoo"), Ian Levy ("Levy"), Janette Stewart ("Stewart," the widow of
> SVL's former Chairman, Peter Stewart), and John G. Graham
> ("Graham"), and other key executives, including Defendant Brian
> George ("George"), SVL's President and CEO, among others, to, first,
> withhold, and otherwise misrepresent, crucial information and
> documents, and, then, ultimately to lie under oath, and withhold other

key documents to falsely defend a lawsuit tried in Jamaica on claims other than those alleged in this Complaint, all with the stated purpose to either frustrate, hinder, and/or delay each of the Plaintiffs from exercising their respective, separate and distinct legal rights, or to steal each of the Plaintiff's separate property rights. These lies and intentional withholding of information and documents only came to be discovered recently, when Mouttet filed Affidavits executed by him and George in other litigation previously pending before this District Court in early October, 2011, and, again, in early January, 2012, and produced certain documents - - disclosed for the first time to any of the Plaintiffs - - in mid-September, 2011. These revelations showed Mouttet and his coconspirators for what they really were, namely, a dishonest group of individuals, who had for many years tried to hide the truth from each of the Plaintiffs, but, who, now, were caught in their web of intentional deceit.

DE 2-8 ¶¶ 1-2.

**Procedural Background**

The operative Complaint consists of 801 paragraphs covering 290 pages and includes 24 counts.  Paul Gerard Mouttet (the "Debtor") and five Relief Defendants are among the 31 defendants.[2]  Six of the 24 counts ask the Court to determine as non-dischargeable all the debts and claims asserted by Talisman and  EGE against the Debtor in the Complaint (the "Core Counts").  The balance of the counts seek recovery from a variety of defendants based primarily on alleged violations of federal and Florida RICO laws.

On the same day the Complaint was filed, Appellants also filed a Motion for Withdrawal of Reference and to Transfer Adversary Proceeding to the U.S. District

_____

[2] The named Relief Defendants are Intralot St. Lucia Limited, Intralot Caribbean Ventures Limited., Intralot S.A., SGLBVI Ltd., and VLT (BVI), Ltd.

Court.  In the Motion for Withdrawal of Reference, Plaintiffs (Appellants) argued that the Bankruptcy Court lacked subject-matter jurisdiction to adjudicate to final judgment the Florida and federal RICO claims brought against the non-debtor defendants in this action.  The District Judge to whom this case originally had been assigned agreed, severed Counts I-XVIII of the Complaint (the "Severed Claims") and withdrew the reference as to the Severed Claims only.  *See* Case 12-cv-23319-UU, DE 20; Compl. ¶ 21, n.1.  The District Court denied the Motion to Withdraw Reference with respect to the six non-dischargeability claims brought solely against Debtor Mouttet (Counts XIX - XXIV).  Then, the District Court referred the Severed Claims back to the Bankruptcy Court "for proposed findings of fact and conclusions of law as to all case-dispositive motions, as well as for final disposition of all non-dispositive motions…."  *Id*.

<u>Discussion</u>

The Bankruptcy Court explained in its decision [DE 1][3] that the Complaint fails to meet even the basic pleading requirements of Fed. R. Civ. P. 8(a)(2) as made applicable by Fed. R. Bankr. P. 7008.  For instance, she wrote, "the way in which the Complaint is laid out, its use of similar defined terms, and its conflation of facts, defendants, and claims in its various factual recitals, makes it virtually impossible to figure out whom is alleged to have done what to whom, when, and where."  Amended

---

[3]  DE 318 in the bankruptcy docket; DE 1 in the district court docket.

Order on Motions to Dismiss [DE 1 at 61 of 81].  The Court agrees.  Indeed, at the
hearing before the Bankruptcy Judge, and here at the District Court, Plaintiffs'
counsel attempted to present a 92 page PowerPoint, including pie charts, in an effort
to explain what the Complaint alleges.

## Core Counts

There are six core counts in the complaint - three asserted by Talisman and
three asserted by EGE (Counts XIX - XXIV).  The Bankruptcy ruled as follows on the
core counts:

As to Count XIX, seeking relief under 11 U.S.C. §523(a)(2), the Bankruptcy
Court granted in part and denied in part the Debtor's motion to dismiss Count XIX;

As to Count XX, seeking relief under 11 U.S.C. § 523(a)(4), the Bankruptcy
Court dismissed with prejudice any claims arising from the alleged theft of loan
proceeds or embezzlement with respect to the $13.6 Million Loan and dismissed
without prejudice any claims arising from the alleged embezzlement relating to the
$29.5 Million Loan, and any claims relating to theft of collateral.

As to Count XXI, seeking relief under 11 U.S.C. §523(a)(6), the Bankruptcy
Court dismissed with prejudice any claims arising from the alleged theft of loan
proceeds or embezzlement with respect to the $13.6 Million Loan for failure to state
a cause of action for willful and malicious injury.

As to Count XXII, seeking relief under 11 U.S.C. §523(a)(4), the Bankruptcy
Court dismissed with prejudice that portion of Count XXII that seeks relief based on

the original Forward Share Sale Agreement (the "FSSA") and dismissed with leave to amend that portion of Count XXII that alleges that the Debtor fraudulently induced EGE to enter into the 2005 Supplemental Agreement for the purpose of depriving EGE of its opportunity to timely exercise its option under the FSSA.[4]

The Bankruptcy Court dismissed Count XXIII with prejudice, which sought relief under 11 U.S.C. §523(a)(4), finding Mouttet cannot be held responsible for converting something that EGE did not own.  And, finally, in the last core claim, the Bankruptcy Court dismissed Count XXIV with prejudice finding that EGE may not bring an action under section 523(a)(6) because a court of competent jurisdiction has already held that the property that Mouttet is accused of stealing was not EGE's property.  DE 1 at 75 of 81.

**Non-Core Claims**

In testing the sufficiency of the Complaint with respect to the claims for fraud and RICO, the Bankruptcy Court concluded that:

> The Complaint is replete with conclusory language. When those conclusory paragraphs are eliminated, the paucity of explicit, rather than general, detail and the confusing conflation of defendants and actions and the scattered nature of the time and element sequences is not cured or easier to decipher.

DE 1 at 63 of 81.

---

[4] "Which amendment must also articulate more precisely what debt EGE seeks to have determined is not discharged."  DE 1 at 71 of 81.

As to the 18 non-core claims (the "Non-Core Claims")[5] raised by Appellants against Defendants, the Bankruptcy Court recommended that they be dismissed without prejudice for lack of bankruptcy court subject-matter jurisdiction because they "are neither related-to the bankruptcy case, nor [is] supplemental jurisdiction . . . appropriately invoked."  DE 1 at 51-52 of 81, *see also* Compl. ¶ 21, n.1; n.22. The Bankruptcy Court explained, "it is not possible to determine either aspect of related-to jurisdiction in the absence of an amended complaint, at which time the reviewing court will be able to determine what causes of action survive and whether such actions are sufficient, whether by impact or common nucleus of facts, to trigger related-to jurisdiction."  DE 1 at 51, 61 of 81.  The Bankruptcy Court further recommends that the Relief Defendants be dismissed from the case with prejudice. DE 1 at 58 of 81.

Subsequently, Plaintiffs filed "revised" objections to the Bankruptcy Court's recommendations pursuant to Fed. R. Bankr. P. 9033.  DE 15 (the "Objections"). Appellants argue that the Bankruptcy Court got virtually everything wrong and that this Court should reject the Order and recommendations "*in toto.*"  Objections at 5, 23, 50.  Appellees request that this Court reject Plaintiffs' Objections, adopt the proposed findings of fact and conclusions of law set forth in the Order, and dismiss this case.  DE 28 at 5.

---

[5]  Counts I-XVIII.

**Issues Presented on Appeal**

1.     Whether the Bankruptcy Court erred in dismissing Talisman's and EGE's core non-dischargeability claims asserted against Debtor Mouttet pursuant to 11 U.S.C. § 523(a)(2)(A)?

2.     Whether the Bankruptcy Court erred in dismissing Talisman's and EGE's core non-dischargeability claims asserted against Debtor Mouttet pursuant to 11 U.S.C. § 523(a)(4)?

3.     Whether the Bankruptcy Court erred in dismissing Talisman's and EGE's core non-dischargeability claims asserted against Debtor Mouttet pursuant to 11 U.S.C. § 523(a)(6)?

4.     Whether the Bankruptcy Court erred in applying principles of international comity, *res judicata*, and collateral estoppel in dismissing EGE's core non-dischargeability claims against Debtor Mouttet?

5.     Whether the Bankruptcy Court improperly prevented Plaintiffs from obtaining discovery concerning their core non-dischargeability claims against Debtor Mouttet?

DE 11 at 14-15 of 49; DE 27 at 7-8.

**Appellants' Appeal and Objections**

Appellants present their "Principal Brief on Appeal" in Docket Entry 11 where they argue the Bankruptcy Court erred in dismissing Talisman's and EGE's Core, Non-Dischargeability Claims (Counts XIX through XXIV).  Later, in Docket Entry 15,

Appellants present their "Joint, Bankruptcy Court Ordered, 'Revised' [9033]

Objections" which addresses the "18 non-core but clearly 'related to' claims' alleged

against all 31 defendants."  DE 15 at 21 of 71.


The Court begins with the first core claim based on 11 U.S.C. § 523(a)(2)(A).

**Court XIX**

The parties agree the Bankruptcy Court correctly recited the elements to be

pled to properly state a claim under § 523(a)(2)(A).[6]

> In order to prevail in an action under section 523(a)(2) the Plaintiffs
> must prove by a preponderance of the evidence that '(1) the debtor
> made a false representation to deceive the creditor, (2) the creditor
> relied on the misrepresentation, (3) the reliance was justified, and (4)
> the creditor sustained a loss as a result of the misrepresentation.' *In re
> Bilzerian,* 153 F.3d 1281 (11th Cir. 1998).

DE 1 at 69 of 81.  As to Talisman's 11 U.S.C. § 523(a)(2)(A) claims against Debtor

Mouttet in Count XIX, the Bankruptcy Court succinctly stated:

> The Debtor argues that Talisman is not entitled to relief under

---

[6] 11 U.S.C.A. § 523: Exceptions to Discharge.
    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of
this title does not discharge an individual debtor from any debt (2) for money,
property, services, or an extension, renewal, or refinancing of credit, to the extent
obtained by (A) false pretenses, a false representation, or actual fraud, other than a
statement respecting the debtor's or an insider's financial condition.
    Section (B) (which Appellants point out is not at issue here) deals with the use
of a statement in writing (I) that is materially false; (ii) respecting the debtor's or an
insider's financial condition; (iii) on which the creditor to whom the debtor is liable
for such money, property, services, or credit reasonably relied; and (iv) that the
debtor caused to be made or published with intent to deceive.

section 523(a)(2) as claimed in Count XIX because its claims are based on misrepresentation of the financial condition of the Debtor or an insider that is not in writing.  While the Debtor is correct that the primary focus of Talisman's claim arises from oral misrepresentations, and, thus, is subject to dismissal, Talisman also alleges the diversion of certain assets and the double pledging of collateral.  These latter claims are properly pleaded.  Accordingly, the Debtor's motion to dismiss Count XIX is granted in part and denied in part.

DE 1 at 70 of 81.  This Court notes there is no authority cited for the proposition that oral misrepresentations are inadequate when pleading a claim pursuant to 11 U.S.C. § 523(a)(2) and the elements cited above do not mention such a requirement.

On appeal Talisman argues it has properly pled each of the elements required by *In re Bilzerian* by alleging that Mouttet, individually and through others, made oral misrepresentations and omissions of material fact, which resulted in, and fraudulently induced, Lender[7] to agree to the creation of numerous new written agreements (including a release of the service fees as collateral for the loan), as a result of those oral misrepresentations.  Compl. ¶ 98-106, 108-09, 113-14, 121-24, 136-39, 150-53, 719-738, 757-58.

It appears Appellant Talisman caused unnecessary confusion by only listing § 523(a)(2) for this count, without specifying whether it was proceeding under  § 523(a)(2)(A) or § 523(a)(2)(B).  The Bankruptcy Court focused on § 523(a)(2)**(B)**, which relates to the use of a materially false **written** statement.  But Appellant now

---

[7]  Collectively, Westford Special Situations Master Fund L.P. ("Westford"), Epsilon Global Master Fund L.P. ("Epsilon Global"), and Epsilon Global Master Fund II, L.P. (Epsilon Global II).

emphasizes it is relying upon § 523(a)(2)**(A)**, which as noted, does not state that the misrepresentation must be in writing.  In support of the Bankruptcy Court's decision, all Appellees have to say is that "Appellants' arguments are not compelling . . ."  DE 27 at 17 of 42.

The Court has carefully reviewed the cited paragraphs and finds they competently allege the Debtor made many false representations to deceive the creditor, the creditor justifiably relied on the misrepresentations, and the creditor sustained a loss as a result of the misrepresentations.  The Bankruptcy Court cannot be faulted due to Talisman's failure to be more specific in alleging the proper subsections of Section 523 on which it was relying.  Accordingly, and due to no fault of the Bankruptcy Court, the Court finds that Talisman has adequately stated a claim in Count XIX for a violation of § 523(a)(2)**(A)**.  *In re Parra*, 483 B.R. 752, 769 (Bankr. D. N.M. 2012) (holding non-dischargeable under § 523(a)(2)(A) portions of debt obtained by oral agreement through fraudulent "invalid substitution" of vehicle titles).  Thus, the Bankruptcy Court's dismissal of Talisman's § 523(a)(2) claim (Count XIX) for the reasons stated was erroneous.  Count XIX is still dismissed without prejudice, however, so that Appellant can state with specificity under what subsection of the statute it is moving.

## Count XXII

The Bankruptcy Court also dismissed EGE's § 523(a)(2)(A) claims in Count XXII finding:

The Debtor is correct that the allegations of the Complaint regarding the initial FSSA do not support a claim by EGE under section 523(a)(2). The Debtor was not a party to the original FSSA and the Complaint's allegations that the original FSSA was part of the massive scheme engineered by Mouttet in 2002 to defraud EGE is not plausible.

However, EGE also alleges that Mouttet fraudulently induced EGE to enter into the 2005 Supplemental Agreement, which caused EGE to fail to exercise its options timely under the FSSA.  While, as currently pleaded, the Complaint does not adequately state a cause of action, that claim, if better facts were provided, might support a cause of action under section 523(a)(2).  Accordingly, <u>that portion of Count XXII that seeks relief based on the original FSSA is dismissed with prejudice</u>.[8] *That portion of Count XXII that alleges that the Debtor fraudulently induced EGE to enter into the 2005 Supplemental Agreement for the purpose of depriving EGE of its opportunity to timely exercise its option under the FSSA is dismissed with leave to amend,* which amendment must also articulate more precisely what debt EGE seeks to have determined is not discharged.

DE 1 at 70-71 of 81 (emphasis provided).

Appellants argue that the Bankruptcy Court erroneously limited EGE's non-dischargeability claims against Debtor Mouttet to the schemes to defraud and steal the SVL stock of EGE, and the dividends paid thereon to Debtor Mouttet (and other defendants), to only one event, namely, the 2005 Supplemental Agreement, and totally ignored eight other well-pled specific events.

The first well-pled specific event the Bankruptcy Court allegedly ignored is

---

[8]  The Court notes that Appellants do not argue error in the Bankruptcy Court's decision to dismiss with prejudice that part of the Complaint that seeks relief based on the original FSSA.  Accordingly, that part of the Bankruptcy Court's decision is affirmed.

EGE's claim that Debtor Mouttet stole "EGE's 17% equity participation interest in both Atlantic and Peninsula, and the profit participations thereon . . ."  Appellants state this is alleged in all three of its non-dischargeability counts (XXII - XXIV) and cites ¶¶ 381-83, 394-99.  The Court disagrees.  Paragraph 381 alleges:

> On or about August 28, 2002, EGE was sold an equity participation in the success of SVL, whereby EGE was conveyed ownership of 17% of SVL's share capital, as well as an equity participation and ownership in the same 17% percentage in both Atlantic and Peninsula.  Thus, it was the intent of all of the parties to these transactions, that EGE would own 17% in each of SVL, Atlantic and Peninsula. . .

DE 2-8, ¶ 381.  Neither this, nor any other paragraph the Court could find, made the necessary allegations regarding false representations to deceive, justified reliance, and loss of EGE's 17% ownership in Atlantic or Peninsula.

Count XXII is five paragraphs in length (¶¶ 774-778) and it incorporates paragraphs 299, and 381-471.  Appellees respond stating

> Appellants do not allege theft in the Complaint under § 523(a)(2)(A).  That Count seeks claims for fraud and misrepresentations.  In addition, Appellee is not even referenced as a theft participant in any of the paragraphs cited in support of this first reason.

DE 27 at 17 of 42.  Appellants reply by pointing to paragraph 740 of the Complaint where it is alleged:

> in order to accomplish the **theft of the over 391,500,000 shares of SVL stock sold to, and owned by EGE**, and the **resulting dividends paid** thereon, Mouttet fraudulently induced EGE to execute, first, the June 28, 2005 Supplemental Agreement and the July 7, 2005 St. Georges Option Agreement, and, then, the two amendments to said Option Agreement, to lull and otherwise prevent EGE from immediately exercising its rights to demand registration of the over 391,500,000

shares of SVL stock sold to, and owned by EGE, to allow Mouttet to
secretly pledge the very shares owned by EGE to obtain the $16.5
million loan from Petters. . .

DE 32 at 9 of 17 (emphasis in original).


While Appellants did not incorporate paragraph 740, and many other

paragraphs to which Appellants now cite in support Count XXII, paragraph 740 above

clearly alleges theft and appears in a section that begins with paragraph 719 and is

entitled, "Factual Background of the Sections 523(a) Non-Dischargeability Claims."

However, this allegation refers to theft of SVL shares purportedly owned by EGE,

which, as will be addressed below, has been determined were never owned by EGE.

This Court affirms the Bankruptcy Court's conclusion that "[a]ll of the claims relating

to EGE's assertion of an ownership right to, or interest in, the SVL stock and the

dividends derived therefrom are barred by *res judicata* with respect to Levy, Stewart,

Hoo, and SVL and barred by collateral estoppel with respect to the other parties to

the Complaint against whom EGE seeks such relief." DE 1 at 54 of 81. *See, e.g.,*

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979).

The second specific allegation purportedly ignored by the Bankruptcy Court is

that "Debtor Mouttet (and others) received disguised dividends from SVL in the form

of secret payments of service fees of at least $300,000 a month, and no dividends

were ever paid to EGE on its substantial stock holdings in SVL. [¶ 401-02, 458-61, 464,

466-67]." This second allegation fails for the same reason as the first, namely

because, as elaborated upon below, the Bankruptcy Court and this Court reject EGE's claim to be a stock holder of SVL.

The third allegation purportedly ignored by the Bankruptcy Court is that Debtor Mouttet received secret payments in the form of disguised dividends from Atlantic and Peninsula [*id*. ¶ 403]; yet no dividends were ever paid to EGE, even though it was entitled to a 17% profit participation and ownership [¶¶ 401-03, 458-61, 464, 466-67]. Upon a review of the cited paragraphs of the Complaint upon which EGE relies, the Court finds they all relate to EGE's purported ownership of SVL stock. So, once again, these allegations do not state a cause of action in favor of EGE.

The fourth allegation purportedly ignored by the Bankruptcy Court is that Debtor Mouttet fraudulently induced EGE to execute an Option Agreement with St. Georges, an entity controlled by Debtor Mouttet and the "Mouttet Crime Family," as part of a fraudulent scheme to try to prevent EGE from exercising its rights to have its 13.5% (fully diluted) ownership interest in SVL duly registered in the books and records of SVL [¶¶ 422-26]. As discussed below, the Jamaican Court already determined that EGE did not timely exercise its option to acquire the Founding Shareholders' stock, so this allegation is also properly dismissed.

The fifth allegation purportedly ignored by the Bankruptcy Court is that in 2007, Debtor Mouttet represented to a third party that EGE was "'a major shareholder of SVL' [¶¶ 433-434]." The sixth purportedly ignored allegation is that Debtor Mouttet stated to a third party that "EGE would receive approximately 13.5%

of the net sales proceeds, if SVL was sold, due to EGE's ownership interest in SVL [¶ 434]." The seventh purportedly ignored allegation is that Debtor Mouttet made false statements to lull EGE into not effectuating the option to register its ownership in SVL on SVL's books and records [¶¶ 435, 439]. The eighth and last purportedly ignored allegation states that as part of a scheme to defraud and steal, Debtor Mouttet secretly and illegally "double-pledged" and sold EGE's SVL stock [¶ 438], and once that loan was repaid, via a settlement with Petters' Trustee, it then further conveyed that SVL stock to the Intralot entities in derogation of EGE's ownership rights. DE 11 at 31 of 49.

The fifth through eighth allegations, again, all rely on the sustainability of the allegation that EGE owned SVL stock. A predecessor court, however, has already determined that EGE never owned any SVL stock. *See* DE 1 at 45 of 81.[9] Since EGE never owned the SVL stock, all claims alleging wrongdoing based on EGE's ownership of SVL stock fail to state a claim. EGE cannot recover on a claim that has been rejected by the Jamaican Court, and which judgment is being given comity by this Court. Accordingly, the decision of the Bankruptcy Court as to Count XXII is affirmed.

The second issue on appeal relates to the Bankruptcy Court's application of 11

---

[9] "The Jamaican court ruled against EGE, holding that EGE 'failed to surrender the Transfer of Shares documents for registration of its shares or tender the $1 per share on the Acquisition Date as required by the Agreements' and that by its failure to comply with the FSSA, the agreement was discharged. A final judgment was entered (the "Jamaican Judgment")."

U.S.C. § 523(a)(4).

**Count XX**

(¶¶ 761-767 (incorporating ¶¶ 756-760)).   Paragraph 756 (the first paragraph of Count

XIX) incorporates ¶¶ 719-738.   Paragraph 719 incorporates ¶¶ 1-298 and 300-380, for a

total of 409 paragraphs.

    11 U.S.C. § 523(a)(4) excepts from discharge debts are based, among other

things, on larceny.   "Larceny is the fraudulent taking and carrying away the property

of another with intent to convert such property to his use without the consent of

another."   *In re Pupello*, 281 B.R. 763, 768 (Bankr. M.D. Fla. 2002).   Also, "[a] key

element of both larceny and embezzlement is that the plaintiff must establish

ownership of the property taken."   *In re Cuenant*, 339 B.R. 262, 277 (Bankr. M.D. Fla.

2006).   It seems necessary to quote the Bankruptcy Court's rulings on this issue, as

the parties represent divergent holdings by that court.   As to this issue, the

Bankruptcy Court held as follows:

> Talisman claims in Count XX that the Debtor caused two entities
> over which he had control to withhold repayment of money that these
> two entities had borrowed, that these acts constitute embezzlement or
> larceny, and, consequently the debt is not dischargeable pursuant to
> section 523(a)(4).   In order to sustain a claim under section 523(a)(4)
> arising from larceny the creditor must prove by a preponderance of the
> evidence that the debtor fraudulently took the property of another
> "with the intent to convert such property" without the consent of the
> owner. *Tobin v. Labidou (In re Labidou),* 2009 WL 2912483, *6 (Bankr.
> S.D. Fla. 2009). The failure to pay back a loan does not generally
> support a claim for larceny.   *See Walter v. Figarola,* 59 So. 3d 188, 190
> (Fla. 3d DCA 2011). The allegations of this Complaint do not suggest an
> exception.

The Complaint does not allege, and Talisman has acknowledged, that there was no fraud when the $29.5 Million Loan was initially made, that the loan was paid down in part, and that any fraud was in the execution of the 2005 Modification Agreement. Thus, as a matter of law, the Complaint fails to state a cause of action for larceny with respect to that portion of the debt associated with the balance owed on the $29.5 Million Loan.

The Complaint also fails to state a cause of action for larceny with respect to the $13.6 Million Loan. The Complaint alleges that the loan to SCGW was made in 2007 but the Complaint relies on bad acts that occurred in 2004 as of the basis for relief. Moreover, while the Complaint alleges that Westford was fraudulently induced to make the loan to SCGW, the claim that Mouttet converted the funds from that loan is inconsistent with the allegations in the Complaint that the proceeds of the loan were used for the purpose for which the loan was made (Complaint, paragraph 139).

Embezzlement, unlike larceny, presupposes that the property stolen was voluntarily turned over by the victim. Embezzlement is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or unto whose hands it has lawfully come." *In re Cuenant*, 339 B.R. 262, 277 (Bankr. M.D. Fla. 2006). The plaintiff must show that the property was taken for the debtor's benefit "with fraudulent intent or deceit." *Id*. The allegations relating to the $13.6 Million Loan fail to state a claim for embezzlement since, as already noted, the Complaint acknowledges that the proceeds of the loan were used as required.

DE 1 at 71-72 of 81 (footnotes omitted).  The Bankruptcy Court dismissed without prejudice any claims arising from the alleged embezzlement of loan proceeds with respect to the $29.5 million Atlantic loan and any relating to theft of collateral, and dismissed with prejudice any and all claims arising from the alleged theft of loan proceeds or embezzlement with respect to the $13.6 SGCW million loan.  DE 1 at 74 of 81.

On appeal, Talisman asserts it

> *also alleges that Debtor Mouttet orchestrated and directed a conspiracy to <u>steal</u> the specific, clearly identifiable*: (1) Service Fees[10] that should have been paid to SVL to the Atlantic bank account at Terrabank in Miami – which account was controlled by Lender – after June 2005 [¶ 720-25, 763]; (2) the SVL stock which was promised to be the replacement collateral for those Service Fees (by "double-pledging" that stock to secure the secret $16.5 million loan Debtor Mouttet received from Petters) [¶ 729, 763] <u>and</u> (3) the entirety of the $13.6 million SGCW loan proceeds, and all of the collateral security for that loan [¶ 729, 763], which necessarily deprived Lender (and, thus, Talisman) of its rights to, and the benefits of the collateral [¶ 764].  Therefore, Talisman's claims clearly do <u>not</u>, *ipse dixit,* arise from "the failure to payback a loan," as incorrectly stated by the Bankruptcy Court [ECF #298 p.30].

DE 11 at 32 of 49 (emphasis in original).  Notably, this Count incorporates paragraphs that incorporates paragraphs, that incorporates even more paragraphs (for a total of approximately 409 paragraphs).  In light of this Complaint's length and complexity, key factual allegations must be plainly stated in each count.  It is wholly unreasonable to expect or require a court to comb through a 290-page complaint to try and locate the allegations that support a specific count.

Concerning the $29.5 million Atlantic loan, Appellants argue that the Bankruptcy Court erred when it summarily held as a matter of law that the Complaint fails to state a cause of action for larceny.  Relying on *Walker v. Figarola,* 59 So.3d 188, 190 (Fla. Dist. Ct. App. 2011), Appellants argue they have stated a claim for

---

[10]  Appellants clarify in their reply that it is alleged that the service fees were assigned to Lender for upwards of ten years (¶¶ 72-74).

conversion because the facts demonstrate that the alleged conversion or civil theft goes beyond, and is independent from, a simple breach of contract to repay a debt. The Bankruptcy Court summarily dismissed this theory stating, "allegations of conversion and theft of collateral . . . are tied up in the RICO and conspiracy counts that this Court has already directed must be dismissed."  DE 1 at 73 of 81.

Appellees respond that as merely collateral, the Service Fees remained the property of Atlantic and that since the Service Fees were never owned by Talisman or its predecessors, Talisman cannot meet the most basic element of larceny.   As stated above, a key element of larceny "is that the plaintiff must establish ownership of the property taken."  *In re Cuenant*, 339 B.R. at 277.  Appellees further assert that the SVL stock that Appellants claim was promised to replace the Service Fees as collateral could not be subject to embezzlement or larceny because it was at best collateral and never owned by Talisman.

Appellants reply by mischaracterizing Appellees response: "Debtor Mouttet claims that the Service Fees were not owned by Lender; however, Plaintiffs alleged that the Service Fees were assigned to Lender . . ."   DE 32 at 10 of 17.  Appellees' argument that Talisman never owned the Service Fees and may not therefore sue for its conversion is persuasive.  The Order of the Bankruptcy Court will be affirmed on its conclusion regarding the $29.5 million Atlantic loan.

Concerning the $13.6 million SGCW loan, Appellants vehemently disagree with

the Bankruptcy Court's statement that

> The Complaint also fails to state a cause of action for larceny with respect to the $13.6 Million Loan . . . [because] the claim that Mouttet converted the funds from that loan is inconsistent with the allegations in the Complaint that the proceeds of the loan were used for the purpose for which the loan was made (Complaint, paragraph 139)[11].

DE 1 at 72 of 81.  Appellants <u>assert</u> that

> Talisman <u>absolutely did **not** plead</u> that the $13.6 million SGCW loan proceeds were used for their agreed use!  The agreed use of the SGCW loan proceeds was to obtain licenses for future gaming and lottery operations in Central America, and for the purchase of a revenue sharing agreement from GTECH [¶ 136].  *One of Debtor Mouttet's co-conspirators, Sevilla, <u>falsely</u> represented in an e-mail to the Lender that the SGCW loan proceeds were being used for these purposes* [¶ 139].  In fact, Debtor Mouttet, and his co-conspirators had already, secretly obtained the needed financing for the purported expansion into Central America from Petters [¶ 130], in violation of the January 2007 MOU provided to the Lender before the $13.6 million loan was ever funded.  *The Bankruptcy Court's erroneous finding, concerning the*

---

[11]  Paragraph 139 of the Complaint alleges as follows: "139. Without any knowledge of the foregoing violation of the MOU, in or about March, 2007, the Lender agreed to make a series of specifically defined short-term loans in the total aggregate amount of $13.6 million to SGCW, the purposes of which were to pursue expansion of a lottery business into Central America, and to purchase the necessary lottery equipment from GTECH to do so - - which Sevilla represented to the Lender was done in an email he sent, on or about May 11, 2007, from Miami - - as follows, among other purposes: (a) $3 million for the partial buyout of GTECH revenue sharing for Guatemala - - which Sevilla again represented to the Lender, in his May 11, 2007, email was done; (b) up to $2 million to repurchase as much as 17% of the shares of Supreme Gaming-Florida issued to a third party; (c) up to $4 million to Flying Fish, the largest shareholder of SGCW, and which was another company controlled by Mouttet and C. Mouttet; and (d) up to $750,000 as working capital for the business operations of SGCW. The $4 million that the Lender funded to SGCW, which SGCW in turn paid over to Flying Fish, was used by Flying Fish to repay, in full, the $4 million personal loan previously made to Mouttet and his brother, C. Mouttet." DE 2-8 at 71 of 460.

> *"proper use" of the SGCW proceeds, ignores these well-pled facts*, and
> *Walker* indicates that, *where the use of loan proceeds is part of a*
> *parties' agreement, and the defendant fails to use the proceeds as*
> *agreed, <u>a claim for conversion or civil theft is proper</u>*.  *Walker*, 59 So.3d
> at 190.  *Here, Talisman has alleged that Debtor Mouttet and his brother*
> *C. Mouttet, among others, <u>misappropriated the SGCW loan proceeds</u> in*
> *violation of the January 2007 MOU.*

DE 11 at 33-34 of 49 (emphasis in original).  Regardless of what Appellants claim is

alleged in paragraph 139, the word <u>*falsely*</u> is not there.  Appellees claim that there is

not a single allegation in the Complaint disputing the representations made by

Sevilla.  In their reply, Appellants are mute as to this issue.  However, upon a quick

search for the word "misappropriated," paragraph 238 (incorporated into this count)

alleges

> Mouttet has admitted, in other litigation before the District Court, that
> he directed, through Flying Fish, the largest shareholder of SGCW, or
> that he had the ability to direct the disbursement of the $13.6 million in
> loan proceeds made by the Lender to SGCW.  Using that authority,
> Mouttet, and his brother, C. Mouttet, each **misappropriated** those funds
> for unauthorized, illegal, and individual and collective personal uses, as
> members of The Mouttet Family Criminal Enterprise.[12]

DE 2-8 at 105 of 460 (emphasis added).  This paragraph is under the wire fraud RICO

allegations, one of the 409 paragraphs scattered throughout the Complaint that are

cited to support this count.  As noted earlier, the Complaint is insufferably long and

nearly impossible to understand and analyze.  The Complaint is replete with

---

[12] *See, also*, for example, paragraph 228: "Mouttet and C. Mouttet knowingly
and purposefully misrepresented the reasons for, and the ultimate use of, the $13.6
million in loan proceeds."

allegations of theft, misrepresentation and misappropriation.  It may well be that Appellants accidently omitted the word "falsely" in paragraph 139.  Dismissing this entire count with prejudice when the defect could be cured with more specific and streamlined allegations is an abuse of discretion, especially in light of the apparent attempt to allege fraudulent conduct.  Since the allegations relative to the $29.5 Million Loan have been dismissed without prejudice, the allegations relative to the $13.6 million SGCW loan will also be dismissed *without* prejudice.  Accordingly, the decision to dismiss with prejudice that part of Count XX that relates to the $13.6 million SGCW loan is reversed.  Taking into account all the arguments made by Appellees and the rulings of the Court, Appellants are given permission to make one more attempt to replead Count XX in such a way that it is clearly alleged that the property was taken for the Debtor's benefit with fraudulent intent or deceit.

**Count XXIII**

¶¶ 779-784 (incorporating ¶¶ 774-778, with ¶ 774 incorporating ¶¶ 299 and 381-471).

Moving on to the application of 11 U.S.C. § 523(a)(4) to EGE, the Bankruptcy Court devoted one paragraph to this issue, namely:

> EGE rests its section 523(a)(4) claim in Count XXIII on the SVL stock claim. The Complaint alleges that "Mouttet has illegally converted the stock, cash proceeds of the dividends, and other valuable personal property of EGE." *A court of competent jurisdiction has already determined that EGE did not have an ownership interest in the stock or the cash proceeds of the dividends*. There is nothing in the Complaint that identifies what constitutes "other valuable personal property."  As Mouttet cannot be held responsible for converting something that EGE did not own, Count XXIII is dismissed with prejudice.

DE 1 at 74 of 81 (emphasis provided).  Appellants again complain that the Bankruptcy

Court completely ignored the same eight "well-pled" allegations specifically

discussed above.  Appellants then argue,

> [b]ased solely on that mischaracterization (that EGE rests its § 523(a)(4)
> claim in Count XXIII on the SVL stock), the Bankruptcy Court then
> summarily refused to address, solely based upon the prior Jamaican
> judgment, the merits of EGE's properly alleged § 523(a)(4) claims. . .
> [T]he Jamaican judgment was the <u>product of a fraud</u> perpetrated by
> Defendants upon the Jamaican court, and therefore, <u>does not preclude</u>
> well-pled claims on the basis of international comity, *res judicata*,
> and/or collateral estoppel.

DE 11 at 34 of 49 (emphasis in original).

As to the allegation of fraud perpetrated upon the Jamaican Court, the

Bankruptcy Court stated:

> EGE argues that it could not fully and fairly litigate its rights in
> the Jamaican courts because an agreement, that the Complaint defines
> as the "2005 Supplemental Agreement", was excluded[13] from the
> Jamaican litigation, based on arguments by the defendants challenging
> its authenticity.  Nonetheless, EGE argues, in 2011, Mouttet or George

---

[13]  Paragraph 417 alleges both that the 2005 Supplemental Agreement was not produced at the Jamaican trial by SVL, George, Hoo, Levy, or Stewart, <u>and</u> that they challenged its authenticity and admissibility in order to prevent its introduction into evidence and thereby obstruct justice and mislead the Jamaican trier of fact to render a decision contrary to the true facts.  DE 2-8 ¶ 417.  During oral argument, Appellees read from a declaration made by Mr. Hylton, who was lead counsel for Ian Levy at the trial in Jamaica.  The declaration directly contradicts these allegations. Counsel stated the Bankruptcy Court took judicial notice of the declaration, and that it is part of the record on appeal.  However, it is not mentioned in the Order on appeal.  Accordingly, this declaration is not properly before the Court and it may not be considered in this appeal.  Transcript (DE 46) at 89-94; Hylton Declaration [DE 182 in Bankruptcy Case No. 12-01842].

or both signed affidavits that contradict the position taken by the defendants in the Jamaican case.  Thus, EGE argues, the Debtor and various co-conspirators committed fraud on the Jamaican court and the Jamaican Judgment should not be given comity.

However, EGE concedes that the issue of the 2011 affidavits and the alleged fraud on the Jamaican court was not brought before the Jamaican trial court or before the Jamaican appellate court before which the EGE case is currently pending.  Moreover, EGE has not claimed that it could not bring this issue up before the Jamaican court. Finally, EGE can provide no explanation for how the Jamaican court is not a court of competent jurisdiction to resolve this dispute when EGE is the party who initially sought recourse in the Jamaican courts, under Jamaican law, and, indeed, continues to pursue that action in Jamaica, even during the pendency of this case. . .

Because the Jamaican Judgment should be given comity, then *res judicata* and collateral estoppel resolve all those claims addressed in or directly dependent on, the allegations resolved by the Jamaican trial court. All of EGE's claims in the Complaint derive from the interests to which it claimed it was entitled, all of which were litigated before the Jamaican court.

Accordingly Counts V, VI, IX, X, XII, XVI, and XVIII, XIII and XXIV are dismissed with prejudice.

DE 1 at 55-56 of 81; *see also* DE 1 at 21 of 81.

Relying upon *Hilton v. Guyot*, 159 U.S. 113 (1895)[14] ("*Hilton*") and *Chevron*

---

[14] "But it is now established in England, by well-considered and strongly-reasoned decisions of the court of appeal, that foreign judgments may be impeached, if procured by false and fraudulent representations and testimony of the plaintiff, even if the same question of fraud was presented to and decided by the foreign court. . .  In the case at bar the defendants offered to prove, in much detail, that the plaintiffs presented to the French court of first instance and to the arbitrator appointed by that court, and upon whose report its judgment was largely based, false and fraudulent statements and accounts against the defendants, by which the arbitrator and the French courts were deceived and misled, and their judgments were based upon such false and fraudulent statements and accounts. This offer, if

*Corp. v. Donziger*, 886 F. Supp. 2d 235 (S.D. N.Y. 2012)[15] (*Chevron*), Appellants argue

that

> [t]he Bankruptcy Court's 'analysis' of the Supreme Court's decision in
> *Hilton* is just simply wrong, and it committed fundamental error and
> otherwise abused its discretion, by determining that "international
> comity" and deference to the Jamaican judgment somehow barred all of
> EGE's claims respecting the stolen 13.5% stock ownership interest in
> SVL.  The Bankruptcy Court completely ignored . . . controlling U.S.
> Supreme Court authority for the proposition that American courts can,
> and should, entertain independent actions for fraud on a foreign court,
> and thereby reject a foreign court's judgment based upon (for example)
> the more recent decision in *Chevron*, 886 F. Supp. 2d 235 (citing
> *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 245-47
> (1944)).

DE 11 at 38 of 49 (emphasis in original and provided).

Certainly courts "can" consider the issue of fraud on a foreign court, but

"should," as a directive, is a self-serving misrepresentation of what *Chevron* says

about *Hazel-Atlas*.[16]  The following quote from *Chevron* suggests a more balanced

---

satisfactorily proved, would, according to the decisions of the English court of appeal
in *Abouloff v. Oppenheimer, Vadala v. Lawes,* and *Crozat v. Brogden,* above cited, be
a sufficient ground for impeaching the foreign judgment, and examining into the
merits of the original claim."  *Id.* at 209-210.

[15]  (Granting partial summary judgment for Chevron on its complaint based on
RICO and other fraud causes of action against the Ecuadoran lead plaintiffs and their
attorneys and dismissing affirmative defenses based on res judicata and collateral
estoppel of the Ecuadoran judgment.)

[16]  ("This is not simply a case of a judgment obtained with the aid of a witness
who, on the basis of after-discovered evidence, is believed possibly to have been
guilty of perjury.  Here, even if we consider nothing but Hartford's sworn admissions,
we find a deliberately planned and carefully executed scheme to defraud not only the
Patent Office but the Circuit Court of Appeals").

approach taking into consideration the circumstances of each case "without the help

of any controlling general postulate:"

> In *Dictograph Products Co. v. Sonotone Corp.*,[17] a case involving the
> alleged submission of false evidence before the Patent Office, Judge
> Learned Hand wrote for a unanimous court as follows:
>
> It is plain that the [Supreme] Court [in *Hazel-Atlas*] did not mean to
> annul the 'salutary general rule * * * that in most instances society is
> best served by putting an end to litigation after a case has been tried
> and judgment entered.'  322 U.S. at 244.  It did not decide that the
> unsuccessful party to an action may always reopen a judgment upon
> producing evidence of fraud in procuring it, even though the evidence
> was inaccessible at the trial; especially it did not so decide when the
> trial had turned upon the issue of fraud and the new evidence was
> another version of what had originally appeared. . .  The fact that he
> does not at first succeed in unmasking the machinations of his adversary
> is no reason for denying him relief after he has finally succeeded in
> penetrating the complete disguise.  And yet it is obvious that there must
> be a limit, else the mere assertion of relevant evidence, though it was
> inaccessible at the trial, will be enough to upset any judgment.  From
> this dilemma there is no escape unless in each case we balance the
> conflicting interests and make a decision ad hoc; and that is as we
> understand the decisions of the Supreme Court that we have cited.
> Hence we must consider the occasion at bar in its concrete details and
> without the help of any controlling general postulate.

*Chevron*, 886 F. Supp. 2d at 283-84.  Appellants state that to determine whether to

recognize or enforce a foreign judgment on the merits where fraud on a foreign court

is alleged, courts consider whether:

> (1)   the fraud prevented a full and fair presentation of the litigant's claim or
> defense in the prior action or otherwise would render it unconscionable
> to give effect to the prior judgment,

---

[17]  230 F.2d 131 (2d Cir. 1956).

(2)    the party seeking relief was diligent in discovering the fraud and
       attacking the judgment, and

(3)    evidence of the fraud is clear and convincing.

DE 11 at 39-40 of 49 citing *Chevron* at 285.

This matter has been fully briefed and was also discussed during oral

argument.  The Court is not convinced that any of the above cited considerations

have been met in this case.  Appellants assert in their brief:

> Stewart, SVL, George, Hoo and Levy, under the orchestration of Debtor
> Mouttet and Graham, challenged the authenticity and admissibility of a
> June 28, 2005 Supplemental Agreement, *by lying under oath, at trial, in
> Jamaica, that it didn't exist (when it clearly did)*, in order to prevent
> its introduction into evidence and thereby mislead the Jamaican court
> to render a decision contrary to the true facts.  Plaintiffs very clearly
> alleged in their Complaint that, if the June 28, 2005 Supplemental
> Agreement had been produced, and if George had testified at the
> Jamaican trial truthfully, as he did in his October 4, 2011 Affidavit filed
> by Debtor Mouttet before District Judge Graham (*thereby admitting the
> existence of the June 28, 2005 Supplement Agreement, a year following
> the earlier lies to the Jamaican court*), the Jamaican court's opinion
> would not have been factually possible.

DE 11 at 40 of 49 (emphasis in original).

What is particularly striking about this issue is the fact that the Jamaican

judgment is on appeal, but this particular issue is not.  *See* DE 1 at 21 of 81.  EGE

cannot possibly be considered diligent in attacking the judgment if it has not raised

this issue in its appeal in Jamaica.  Appellants' claim of fraud on the Jamaican Court,

even if true, does not approach the severity of the *Chevron* claims and will not defeat

a claim of international comity.  The Court sees no reason why Debtor Mouttet's

much later, October 4, 2011, Affidavit admitting the existence of the June 28, 2005

Supplement Agreement would make a difference in terms of an appeal of what

happened in Jamaica.  If a fraud occurred during the Jamaican trial, EGE would have

been aware of it at the time.  Accordingly, this Court affirms the Bankruptcy Court's

decision to recognize the Jamaican judgment on the merits.

As far as EGE's argument that its 11 U.S.C. § 523(a)(4) claim is well stated

based on the eight well-pled specific events cited earlier in their brief, the Court's

conclusion regarding the viability of those arguments remains the same as when the

Court addressed them earlier.  *See supra* at pages 16-20.

The third issue on appeal relates to the Bankruptcy Court's application of 11

U.S.C. § 523(a)(6).

## Count XXI

With respect to Count XXI asserting a claim under Section 523(a)(6), the

Bankruptcy Court stated:

> In order to sustain a claim under section 523(a)(6) the Plaintiffs
> must allege and prove that the Debtor acted "with the actual intent to
> cause injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

> In Count XXI Talisman alleges that the Debtor's liability under the
> Second Guarantee is not dischargeable because the Debtor stole the
> proceeds of the $13.6 Million Loan.[18]  The Debtor argues that Talisman is
> judicially estopped from claiming that Mouttet is liable to it for the

---

[18]  The Complaint also alleges that the Debtor stole the service fees but
nowhere in the Complaint is it alleged that the service fees secured repayment of the
$13.6 Million Loan. DE 1, n.24.

$13.6 million because it sued Mouttet on the Second Guarantee and did not seek recovery under any other theory of law.  For the reasons this Court has already addressed, the Court cannot rule on this motion to dismiss that Talisman is judicially estopped from raising this claim by virtue of the Guarantee Judgment.  *Nonetheless Count XXI is dismissed with prejudice because, as noted already, the Complaint alleges the $13.6 Million Loan proceeds were used for the purposes for which the money was lent*,[19] and accordingly, Talisman's claim fails to state a cause of action for willful and malicious injury.

DE 1 at 74-75 of 81 (emphasis added).  Unfortunately, due to the length of the Complaint and the way it is laid out, including the conflation of facts, defendants and claims, the Bankruptcy Court's finding that the Complaint alleges the $13.6 Million Loan proceeds were used for the purposes for which the money was lent is completely understandable.  However, as found earlier in this Opinion, this Court has concluded, contrary to the Bankruptcy Court's ruling, that Appellants should be given another opportunity to attempt to allege that there was a conversion of the $13.6 million loan proceeds.  *See, supra*, page 26.  Hence, this Count must be clarified and restated. Therefore, this Count is dismissed *without* prejudice.

## Count XXIV

As to the Bankruptcy Court's conclusion regarding the sufficiency of the Complaint's section 523(a)(6) allegation against EGE, it held:

EGE's claim in Count XXIV seeking a determination under 523(a)(6) is equally doomed. The Debtor argues that EGE may not bring an action under section 523(a)(6) because a court of competent jurisdiction has already held that the property that Mouttet is accused

---

[19]  Referring to Complaint, DE 2-8, ¶ 139.

of stealing was not EGE's property.  This Court agrees.  Accordingly, Count XXIV is dismissed with prejudice.

DE 1 at 74-75 of 81.  Consistent with this Court's opinion that the Bankruptcy Court

was correct regarding comity for the Jamaican Court's rulings and *res judicata*, the

Court affirms the Bankruptcy Court's dismissal of Count XXIV with prejudice.

The last[20] issue is phrased:  Whether the Bankruptcy Court improperly

prevented Plaintiffs from obtaining discovery concerning their core non-

dischargeability claims against Debtor Mouttet?

Appellants state that

the Bankruptcy Court effectively blocked each of Plaintiffs' attempts to pursue important, initial discovery [ECF #73], despite the fact that no stay of discovery was sought until January 28, 2013 [ECF #235], resulting in an "oral stay of discovery" being announced by the Bankruptcy Court in open court on February 25, 2013:

I'm going to excuse compliance with the scheduling order until I rule on the motion to dismiss – motions to dismiss. [Feb. 25, 2013 Tr. 27:3-5, ECF #290].

In doing so, the Bankruptcy Court abused it discretion by providing Defendants with the stay of discovery they sought, and by preventing Plaintiffs from discovering additional documents/evidence not previously available to them.

DE 11 at 45 of 49 (emphasis in original).  Appellees respond,

---

[20]  The fourth stated issue, whether the Bankruptcy Court erred in applying principles of international comity, *res judicata*, and/or collateral estoppel in dismissing EGE's core non-dischargeability claims against Debtor Mouttet, has been addressed within the body of this opinion.  It does not merit further analysis.

On or about January 8, 9 and 18, 2013, Appellants propounded interrogatories, requests for admissions and requests for documents on eight (8) of the Defendants.  Each of these Defendants, either filed or joined in on motions for protective orders and a motion to stay discovery. These matters were set to be heard on February 25, 2013. On February 14, Appellants filed a *Notice of Withdrawal of Previously Served and Currently Pending Discovery Requests Directed at Certain Defendants* [D.E. #274] ("Appellants' Notice of Withdrawal"). Appellants' Notice of Withdrawal was filed, in part, in response to the directions given by the Bankruptcy Court at the January 28, 2013 hearing and the orders entered therefrom. Appellants specifically stated the following in their Notice of Withdrawal:

*       *       *       *       *

3. Plaintiffs will re-serve various discovery requests upon these defendants, and the other parties named herein, at a later date, taking into account the Court's prior pronouncements and instructions, after the Court's ruling on the various motions to dismiss now pending and set for hearing on February 27, 2013.

4. Accordingly, there is no need for the Court, or the parties, to address any issues pertaining to the foregoing discovery requests at the scheduled, upcoming February 25, 2013 hearing, thus, eliminating the need for any hearing, at this time, on the pending motion for protection order [ECF # 244] and joinders [ECF #241, 242, 243, 247, 250, 257, 266].

5. Further, Plaintiffs do not object to a limited suspension of the required Rule 26(a)(1) disclosures until a date following the Court's ruling on the various pending motions to dismiss.

Appellants' Notice of Withdrawal [D.E. #274, pp. 2-3].  Accordingly, the issue Appellants make over their inability to obtain discovery was entirely their own doing. The Court did not "prohibit" Appellants from propounding discovery, it only advised Appellants that they could not engage in a fishing expedition and had to better articulate which requests refer to the Core Claims or the Non-Core Claims. [Jan. 28, 2013

Tr., p. 79-80, D.E. #267].  In addition, the Bankruptcy Court commented that: "with respect to the dischargeability portion, even if I am inclined to stay discovery . . . it's not going to apply to discovery relating to the dischargeability action, assuming it's relevant discovery . . .." [Jan. 28, 2013 Tr., p. 80:1-7, D.E. #267].

DE 27 at 38 of 42.  In their reply, Appellants are mute in response to this argument.

Therefore, the Court is unpersuaded the Bankruptcy Court abused its discretion in its

management of discovery.

## Non-Core Claim Recommendations

The Bankruptcy Court "proposes that the District Court dismiss the Severed

Counts with prejudice[21] with leave for the Plaintiffs to file a complaint in the District

Court invoking its jurisdiction on some basis other than 28 U.S.C. §1334."  DE 1 at 75

of 81.  In a footnote, the Bankruptcy Court added, "[a]s requested by the parties and

in order to assist the District Court in its review, this Court has articulated several

grounds for its rulings, recognizing there are several alternative grounds pursuant to

which many of the Counts are dismissed."  *Id*. at n.56.  Appellants have filed

---

[21]  The Bankruptcy Court must have meant "without prejudice," since it is recommending granting Plaintiffs leave to amend.  Furthermore, the Bankruptcy Court stated it "proposes the District Court affirm its prior order that this Court does not have subject matter jurisdiction, and that, therefore, Counts I-XVIII must be dismissed without prejudice in order for the Plaintiffs to refile a complaint in the District Court . . ."  DE 1 at 48 of 81.

extensive objections to the Bankruptcy Court's conclusions regarding the non-core claims. *See* DE 15. In light of the conclusion reached below that "related-to" subject matter jurisdiction is lacking, it is unnecessary to address those objections because the non-core severed counts must be dismissed. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006) ("when a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety); *FCCI Commercial Ins. Co. v. Armour*, No. 8:12–cv–1240, 2012 WL 4208056, at *3 (M.D. Fla. Sept. 19, 2012) (since proceeding was not related to bankruptcy action, subject matter jurisdiction over the action under section 1334(b) was lacking and the case  had to be dismissed).[22]

*Subject Matter Jurisdiction*

Appellants stated in their Complaint that "while this Bankruptcy Court arguably

---

[22]  As an alternative basis for this ruling, the Court notes that Talisman's RICO claims fail because the underlying allegations, which consist primarily of foreign acts committed by foreign actors to the detriment of a foreign plaintiff, exceed the territorial reach of the RICO statute.  Specifically, Talisman, a foreign company (a British Virgin Islands company with its principal place of business in Switzerland) (Compl. ¶ 26) alleges a so-called "vast international scheme. (*id*. ¶ 11) that centers on the alleged failure of SVL, Atlantic, and SGCW, all foreign companies (*see id*. ¶¶ 28, 37, 44), to repay loans made to them by Epsilon Global Master Fund, Epsilon Global Master Fund II, and Westford Special Situations Master Fund, L.P., also foreign companies (Cayman Island entities with their principal place of business in Switzerland) (*see id* ¶ 26) to invest in a gaming and lottery business in Jamaica, Central America, and South America (*see id*. ¶¶ 77, 81, 129). This extraterritorial fact pattern fails every applicable test utilized to determine whether a RICO claim exceeds the statute's territorial reach.  EGE's Florida RICO claims are similarly extraterritorial. *See, e.g., Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010)  ("When a statute gives no clear indication of an extraterritorial application, it has none."); *Sorota v. Sosa*, 842 F. Supp. 2d 1345, 1348-49 (S.D. Fla. 2012) ("RICO does not apply extraterritorially.")

may have subject matter jurisdiction over the Federal RICO claims asserted against

various entities which are alter egos of Mouttet, the Bankruptcy Court does <u>not</u> have

subject matter jurisdiction over the other non-debtor defendants."  DE 2-8, n.1

(<u>emphasis in original</u>).  At the same time they filed their Complaint, Appellants'

moved to Withdraw the Reference, stating:

> 1.  In briefest summary fashion, this Adversary Proceeding involves a vast, international scheme to separately deceive, defraud, and steal from each of the Plaintiffs, which conspiracy was masterminded by the Debtor herein, Paul Gerard Mouttet (the "Debtor"), with the active and continuous assistance of various members of his family, entities owned and/or controlled by the Debtor and his family, and the other named Defendants.  The illicit schemes and illegal conspiracies resulted in tens of millions of dollars of compensatory damages to Talisman, due to fraud, the thefts of loan proceeds and collateral security for various loans, as well as the "double-pledging" of collateral; and, separately, tens of millions of dollars of compensatory damages to EGE, due to fraud, and the theft of stock it owned, and the dividends paid on those shares.  In addition, each Plaintiff seeks punitive and/or treble damages, among other relief, and, thus, each Plaintiff separately seeks an award of hundreds of millions of dollars.

> 2.  This Adversary Proceeding alleges, among other causes of action, two (2) Federal claims by Talisman, only, arising under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, against twenty-five (25) separate individuals and entities (in addition to two (2) other Relief Defendants), **only one of whom is a Debtor** before this Bankruptcy Court.  But for the need to file these claims against the Debtor, the Complaint would have been originally filed in the District Court.

> 3.  This Adversary Proceeding also alleges a total of sixteen (16) additional causes of action - - eight (8) by each Plaintiff - - arising under Florida state law, naming all of the foregoing Defendants, plus one (1) additional Defendant, and three (3) more Relief Defendants.

> 4.  Finally, there are six (6) causes of action - - three (3) for each

Plaintiff - - that seek to liquidate the debts the Debtor separately owes to each of the Plaintiffs, and to have a determination made that those debts are all non-dischargeable, pursuant to Sections 523(a)(2), (a)(4), and (a)(6) of the Bankruptcy Code. The factual basis of the Federal RICO and Florida state law claims form the factual basis for these non-dischargeability claims, and, thus, the reason all such claims have been filed initially in this Bankruptcy Court.

5.   While some of the other twenty-four (24) Defendants **might** be considered affiliates and/or alter egos of the Debtor, and, therefore, claims against the same **might** be within this Bankruptcy Court's subject matter jurisdiction, over half of them (some fourteen (14) Defendants) are not affiliates (as defined by the Bankruptcy Code) or alter egos of the Debtor, and, therefore, this Bankruptcy Court does not have subject matter jurisdiction for the Federal RICO claims, as well as the Florida law claims, asserted against those Defendants. Each of those fourteen (14) Defendants are indispensable parties to the Federal RICO and Florida law claims, separately alleged by each of the Plaintiffs in this Adversary Proceeding.

6.   In addition, pursuant to 28 U.S.C. §1332, the District Court has subject matter jurisdiction over each of the Florida state law claims, based upon the complete diversity[23] of the parties.

7.   Accordingly, in order for each of the Plaintiffs to obtain the necessary and appropriate relief to which they are each entitled for the

---

[23]  Plaintiffs allege that EGE's claims (all of which sound in state law) are based on federal diversity jurisdiction (Compl. ¶¶ 7, 317), but the parties are not diverse. Plaintiffs are foreign entities (*id*. ¶¶ 26, 322), and Defendants are a mix of foreign and domestic individuals or entities (*see id*. ¶ 323).  For diversity jurisdiction to exist, *there must be at least one domestic party on each side of the litigation.  See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 860 (11th Cir. 2000) ("It is a standard rule that federal cousrts do not have diversity jurisdiction over cases where there are foreign entities on both sides of the action, without the presence of citizens of a state on both sides.") (emphasis added).  Because there is no domestic plaintiff and there are numerous foreign defendants, **there is no diversity**.  Appellees raised this argument below (see DE Bankr. 105 at 18), and Appellants did not contest it.  (*See* DE Bankr. 134 at 47, n.24).

vast damages and injuries they each separately incurred, and to avoid duplicative lawsuits in both this Bankruptcy Court, and the District Court, the Plaintiffs have filed this Adversary Proceeding in this Bankruptcy Court, and, now, **seek to have the District Court withdraw the reference for the Bankruptcy Court to adjudicate this Adversary Proceeding and to have the same transferred to the District Court, where all of the claims against all of the Defendants and Relief Defendants can be prosecuted and fully litigated, at one time, in one proceeding, to a final judgment.**

Complaint, DE 2-8 at 306-309 of 460 (emphasis in original).  Appellants continue this

request in their Revised Objections:

> Since all parties (except Debtor Mouttet) want this case adjudicated in this District Court [ECF# 86; 97 p.12 n.4; 138; 141; 201 (penultimate para. p.3); 202 p.2; 203 ¶4; 204 p.1; 205 p.1; DE10-12, 16-17 (Ungaro)], and because all of Plaintiffs' 24 Claims are intertwined and interrelated, Plaintiffs request that this entire, complex case remain in this District Court, so that all further matters are properly handled by an experienced District Judge, with a dedicated Magistrate Judge's help.

DE 15 at 22 of 71.

As mentioned in the procedural background section of this Opinion, Judge Ungaro granted in part and denied in part the Motion to Withdraw Reference.  She specifically agreed that the Bankruptcy Court does not have subject matter jurisdiction over the federal RICO claims brought against the non-debtor defendants. *See* Case No. 12-23319-CV-UU, DE 20 at 2.  The District Court then severed Counts I-XVIII of the Complaint and withdrew the reference as to the Severed Claims only. The District Court denied the Motion to Withdraw Reference with respect to the Core Claims.  Then, the District Court referred the Severed Counts back to the Bankruptcy

Court "for proposed findings of fact and conclusions of law as to all case-dispositive motions, as well as for final disposition of all non-dispositive motions…." *Id*. This ruling caused some confusion[24] for the Bankruptcy Court, as it stated:

> The inability to render a final judgment on a matter is not the same as lacking subject matter jurisdiction. Nonetheless, it is not this Court's place to interpret the District Court's order to mean something other than what it says. While this Court recognizes that the District Court's decision to "refer" the Severed Counts back to this Court creates some confusion, it will be for the District Court to decide what was the District Court's intention. If this Court lacks subject matter jurisdiction, this Court has no choice but to dismiss the Severed Counts with leave to refile in the District Court at which time the Plaintiffs will need to invoke jurisdiction other than that provided by section 1334.[25]

> However, if, in fact, the District Court "meant" that the only issue it decided was this Court's inability to enter a final judgment on all counts of the Complaint, and intended for this Court to determine whether and to what extent the Severed Counts nonetheless are appropriately filed under section 1334's "related to" jurisdiction, this Court finds that the Severed Counts are neither related-to the bankruptcy case, nor that supplemental jurisdiction is appropriately invoked.[26]

---

[24] The Bankruptcy Court also explained that it was unclear why the district court referred the severed counts back to the Bankruptcy Court because "[t]he bulk of the Complaint involves complex RICO allegations against foreign defendants requiring a 'significant interpretation' of federal statutes." DE 1 at n.20.

[25] "Because a court always may determine whether it has subject matter jurisdiction, this Court may dismiss the Severed Counts. However, to the extent that this Court may only make a proposed finding that dismissal of the Severed Counts is warranted based on lack of subject matter jurisdiction, then, that is this Court's proposed finding on this issue. Moreover, the Order of Referral only stated that this Court lacks subject matter jurisdiction over the Federal RICO counts; the District Court did not specifically address the Florida RICO counts or the state law claims." DE 1 at n.22.

[26] After recommending dismissal for lack of subject matter jurisdiction (and that supplemental jurisdiction was not appropriately invoked), the Bankruptcy Court

DE 1 at 50-51 of 81, *see also* n.22.

Appellants argue that their jurisdictional concession in their Complaint, which was adopted by the District and Bankruptcy Courts, was merely "inartful" pleading (D.E. Bankr. 134 at 33) that may be amended pursuant to 28 U.S.C. § 1653.  DE 15 at 33 of 71.  Appellants argue that: (1) the District Court should not have accepted their argument as to jurisdiction and (2) the Bankruptcy Court should not have accepted the District Court's Withdrawal Order.  If anything is "inartful," it is Appellants' argument that the District Court erred in adopting *their* argument and the Bankruptcy Court erred in following a District Court's order.

Even if this Court were to accept Appellants' position that they did not "mean" what they said when they stated that their claims over the non-debtor defendants were not sufficiently related to the bankruptcy case to confer bankruptcy court subject matter jurisdiction under 28 U.S.C. § 1334(b), Appellees make the following

---

went on to address the issues raised in the motions to dismiss.  The Bankruptcy Court recommended that the Severed (Non-Core) Counts should be dismissed, the claims against the Relief Defendants should be dismissed with prejudice, that Talisman lacked standing to bring any action arising under Florida or federal RICO, or the conspiracy claims associated with those actions, and that the court lacked personal jurisdiction over SVL, Brian George, Atlantic, Haven, Atlantic Consultants, AmeriServices, Peninsula, St. Georges, Flying Fish, SGL, SGCW, Ian Levy, John G. Graham, and Stewart (collectively, the "Foreign Defendants").  However, as this Court agrees that the Bankruptcy Court does not have subject matter (or supplemental) jurisdiction over the Non-Core Claims, it is inappropriate to address those recommendations at this time and the Non-Core Claims must be brought in a separate action at which time the Plaintiffs will need to invoke jurisdiction other than that provided by § 1334.

well reasoned and supported argument showing that the Bankruptcy Court was

correct in recommending that "related to" subject matter jurisdiction is not present

in this case.  Appellees argue:

> A case is "related to cases under Title 11" if "the outcome could alter
> the debtor's rights, liabilities, options, or freedom of action (either
> positively or negatively) and which in any way impacts upon the
> handling and administration of the bankrupt estate." *Matter of Lemco*
> *Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990) (internal quotation
> omitted).  While the scope of related-to jurisdiction is broad, "a
> bankruptcy court's 'related to' jurisdiction cannot be limitless."
> *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 (1995); *In re Moran Lake*
> *Convalescent Ctr., LLC,* 10-43405-MGD, 2012 WL 4511339, at *3 (Bankr.
> N.D. Ga. Aug. 28, 2012).

> Talisman's claims are not "related to" the Bankruptcy Case
> because their focus is on the repayment of loans and recovering certain
> shares and dividends of (non-debtor defendant) Supreme Ventures
> Limited ("SVL") stock (the "SVL Shares"), none of which is property of
> the bankruptcy estate. (See Compl. ¶ 10) (seeking divestiture of certain
> non-debtor defendant's assets to Talisman); *see also In re  Schwarz-*
> *walder*, 242 B.R. 734, 739 (Bankr. M.D. Fla. 1999) ("Proceedings to
> resolve disputes between two non-debtors regarding property which is
> not property of the estate generally are not 'related to' a bankruptcy
> case within the meaning of § 1334 of title 28".). In fact, the only relief
> sought against Defendants is for the benefit of Plaintiffs, not the Estate.
> In such circumstances, courts have declined to exercise "related to"
> jurisdiction.  *See In re Macnichol*, 240 B.R. 731, 732 (Bankr. S.D. Ohio
> 1999).

> As for EGE's claims, those claims fail to create "related to"
> jurisdiction because they arise out [a] of contract between non-debtors
> and seek the recovery of property that is not part [of] the Estate.
> Specifically, EGE alleges entitlement to the SVL Shares pursuant to a
> Forward Share Sale Agreement (the "FSSA") to which the Debtor was not

a party.[27]  EGE seeks, through its claims, to recover the SVL Shares that it believes it should have received pursuant to the FSSA.  (*See, e.g.,* Compl. ¶ 299(a).)  But claims to recover non-estate property do not satisfy the "related to" requirement.  *See AEL Fin., LLC v. Tessier,* CIV.A. H-07-1133, 2007 WL 2427867, at *1 (S.D. Tex. Aug. 22, 2007) ("A third party action does not create "related to" jurisdiction when the asset in question is not a property of the estate.") (citation omitted).  The reasoning for this jurisdictional limitation is that, even if EGE succeeds with its claims, the property will be returned to EGE, not the Estate.  Accordingly, the Estate will not be affected. *See Joyner v. S.F.L. & S.I.L., LLC,* 485 B.R. 538, 560 (W.D. La. 2013) (remanding to state court because "[i]f [plaintiff] succeeds on the merits of his claims, and any of the transactions are rescinded, that property would then potentially be returned to its alleged rightful owner; it would never become part of [the debtor's] bankrupt estate").

Plaintiffs' primary argument for "related to" jurisdiction is that, to the extent it can recover jointly and severally against a non-debtor defendant, its claims against the Debtor will decrease, affecting the Estate. (D.E. Bankr. 134 at 34.)  As Talisman conceded in its Motion to Withdraw the Reference (D.E. Bankr. 2 at 8), however, "joint conduct, alone, is not sufficient to confer subject matter jurisdiction in a bankruptcy court over non-debtors."[28]  *See, e.g., First Ind. Bank v. Wilson,* 271 B.R. 511, 514 (Bankr. E.D. Mich. 2001).  Moreover, while some courts have found joint and several liability can provide a basis for related-to jurisdiction, the better reasoned position is that such an attenuated position stretches the limits of the Eleventh Circuit's related-to jurisdiction "beyond the breaking point of conceivability." *In re Soderstrom,* 6:12-CV-1205-ORL-37, 2013 WL 24205, at *4 (M.D. Fla.

---

[27]  The FSSA was allegedly between EGE and Defendants SVL, Hoo, Peter Stewart, and Levy.  Compl. ¶ 384.

[28]  Plaintiffs' argument ignores the fact that courts in this Circuit have consistently held there is no right to contribution in civil RICO actions.  *See, e.g., Seminole Elec. Co-op., Inc. v. Tanner,* 635 F. Supp. 582, 584 (M.D. Fla. 1986).  Moreover, under Florida law, "there is no right of contribution for intentional torts." *Bel-Bel Int'l Corp. v. Barnett Bank of S. Florida, N.A.,* 158 B.R. 252, 256 (S.D. Fla. 1993).

Jan. 2, 2013).[29] As the *Soderstrom* Court explained: "To find that these purely state law claims convey 'related to' jurisdiction would be to declare that all bankruptcy courts have jurisdiction over all claims against any non-debtors sued alongside debtors.  Such a finding would be utterly illogical." *Id.*  Like the claims in *Soderstrom*, it would be "utterly illogical" to extend "related to" bankruptcy jurisdiction to Plaintiffs' claims against 20-plus non-debtor defendants.

Further, given the *de minimus* assets of the Debtor as compared with his liabilities as they existed on the date of his bankruptcy petition (see D.E. Bankr. Debtor 1), Plaintiffs fail to establish any real effect that their claims could have on the administration of the Debtor's estate. *See First Ind. Bank*, 271 B.R. at 514 ("[B]ecause this is a no asset case, any claim by First Indiana against the estate or by the non-debtor defendants for contribution would not have any effect on the administration of the bankruptcy estate."). In fact, at the February 27, 2013 hearing on defendants' motions to dismiss (the "Hearing"), the Bankruptcy Court correctly noted, and Plaintiffs' counsel agreed that, because there will not be a distribution to unsecured creditors in this case, recovering damages from other parties would not have an effect on the Estate. (Transcript of February 27, 2013 Hearing at 179:21-25, 180:1-3.)  Accordingly, Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction.

DE 28 at 10-12 of 55.

Appellants' response to the above arguments is sorely lacking.  First they argue that the District Court recognized, as a matter of law, that both this District Court and the Bankruptcy Court had bankruptcy subject matter under § 1334 when this case was originally filed because § 1334 provides that a district court must first have

---

[29] *See, e.g., In re First NLC Fin. Servs., LLC*, 410 B.R. 726, 732 (Bankr. S.D. Fla. 2008) (finding related-to jurisdiction based on allegation of joint conduct, finding that if non-defendant was found jointly liable, estate might only bear a portion of judgment); *but see In re First Magnus Fin. Corp.*, 403 B.R. 659, 667 (D. Ariz. 2009) (rejecting reasoning of *First NLC*, in part, because such rationale could endlessly stretch bankruptcy court's jurisdiction).

bankruptcy subject matter jurisdiction to be able to refer a case to the bankruptcy court pursuant to § 157(a).  However, it was <u>plead</u> <u>and</u> <u>argued</u> by Appellants that their claims over the non-debtor defendants were not sufficiently related to the bankruptcy case to confer bankruptcy court subject matter jurisdiction under 28 U.S.C. § 1334(b) and the District Court agreed.  Nonetheless, these Non-Core matters were referred, and the Bankruptcy Court recommended that "related to" jurisdiction did not lie.  The Court does not find Appellants' change in position persuasive and the and their arguments in this regard are rejected.

The next and only other argument asserted by Appellants is the same argument made before the Bankruptcy Court, namely that the outcome could conceivably have an effect on the bankruptcy estate "because Debtor Mouttet's actions permeated each and every one of the illegal acts alleged in Plaintiffs' Complaint, which in turn support each of the 18 Counts . . ."  The Bankruptcy Court felt it could not address this argument because "it is not possible to determine either aspect of related-to jurisdiction in the absence of an amended complaint, at which time the reviewing court will be able to determine what causes of action survive and whether such actions are sufficient, whether by impact or common nucleus of facts, to trigger related-to jurisdiction."  DE 1 at 51 of 81.  This Court finds, relying on Appellants' first and original argument that "related-to" jurisdiction did not exist, the Appellees' well supported analysis leading to the same conclusion, and the Bankruptcy Court's recommendation that "related-to" jurisdiction is lacking, to be the most compelling

arguments and the Court affirms the Bankruptcy Court's ruling that "related-to"

subject matter jurisdiction is lacking here.

**Supplemental jurisdiction**[30]

---

[30] There is a conflict among the district courts in the Eleventh Circuit as to whether a bankruptcy court may or may not exercise supplemental jurisdiction under 28 U.S.C. § 1367.  The courts in the following cases held or explicitly or impliedly recognized that the grant of supplemental jurisdiction found in 28 U.S.C.A. § 1367 does not extend to the bankruptcy courts (the majority view): *In re Alpha Steel Co., Inc.*, 142 B.R. 465 (M.D. Ala. 1992); *Matter of Romar Intern. Georgia, Inc.*, 198 B.R. 401 (Bankr. M.D. Ga. 1996); and *In re Davis*, 216 B.R. 898 (Bankr. N.D. Ga. 1997).  On the other hand, the courts in the following cases either held or explicitly or impliedly recognized that bankruptcy courts have supplemental jurisdiction under 28 U.S.C. § 1367, or applied the rule that bankruptcy courts have supplemental jurisdiction (the minority view):  *In re EZ Pay Services, Inc.*, 390 B.R. 421 (Bankr. M.D. Fla. 2007) (recognizing conflict); *In re Anchor Glass Container Corp.*, 325 B.R. 898 (Bankr. M.D. Fla. 2005); *In re Hospitality Ventures/LaVista*, 358 B.R. 462 (Bankr. N.D. Ga. 2007); *In re Feifer Industries*, 141 B.R. 450 (Bankr. N.D. Ga. 1991).  *Marshall & Ilsley Trust Co. v. Lapides (In re Transcolor Corp.)*, 2007 WL 2916408 (Bankr. D. Md. 2007) contains an excellent summary of the cases in which courts found that the bankruptcy courts may exercise supplement jurisdiction and the cases in which courts found to the contrary.  In *In re Transcolor Corp.*, the bankruptcy court declined to exercise supplemental jurisdiction. *See also Allen v. Kuhlman Corp.*, 322 B.R. 280, 284 (S.D. Miss. 2005); *Liberty Mut. Ins. Co. v. Lone Star Inds., Inc.*, 313 B.R. 9, 21 (D. Conn. 2004).

Section 1367 of Title 28 provides that in a civil action in which the district court has original jurisdiction, the district court also has "supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy under Article III" of the Constitution and further provides that such supplemental jurisdiction includes claims that involve the joinder or intervention of additional parties.  28 U.S.C.A. § 1367(a).  District courts thus have supplemental jurisdiction of related third-party claims that arise out of the same nucleus of operative facts when the district court would not have jurisdiction of that dispute under federal question or diversity jurisdiction.[31]   28 U.S.C. § 1367 further provides, in pertinent part, as follows:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

    (1) the claim raises a novel or complex issue of State law,

    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3) the district court has dismissed all claims over which it has original jurisdiction, or

    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

However, there is nothing specific in Title 28 that provides that a district court has supplemental jurisdiction over claims with respect to 28 U.S.C.A. § 1334 and

---

[31]  28 U.S.C.A. §§ 1331, 1332.

there is also no provision in Title 28 that authorizes a district court to refer its

supplemental jurisdiction over such matters, if it has such, to a bankruptcy court.

This has created a split in the circuits on the question of whether district courts have

supplemental jurisdiction in bankruptcy-related matters and whether, if they do,

upon referral bankruptcy courts have such supplemental jurisdiction.

In *In re Prestige Realty Group of Ohio & Florida, LLC*, 420 B.R. 894 (Bankr. S.D.

Fla. 2009) the Bankruptcy Court concluded that its "related to" jurisdiction is not

limited to those cases that satisfy the conceivable effect test[32] but also arises when

the court's supplemental jurisdiction is triggered. *Id.* at 898-899.  The court noted

that by virtue of a reference, a bankruptcy court could exercise the district court's

supplemental jurisdictional authority under 28 U.S.C.A. § 1367, and thus, a

bankruptcy court may have "related to" jurisdiction of a third-party complaint of

which it would not otherwise have had jurisdiction under the conceivable effect test,

based on the principle that, if the required jurisdictional nexus between the primary

claim and the core-related supplemental claim exists, they form one constitutional

"case or controversy."  *Id.* at 898 (quoting *Hospitality Ventures/Lavista v. Heartwood*

*11, L.L.C. (In re Hospitality Ventures/Lavista)*, 358 B.R. 462 (N.D. Ga. 2007).

---

[32]  A dispute is "related to" a case under Title 11 when its result "'could conceivably'" have an "'effect on the estate being administered in bankruptcy.'"  *In re Ryan*, 276 F.App'x 963, 966 (11th Cir. 2008) citing *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995)).

Assuming, for purposes of this discussion only, that the Bankruptcy Court has the authority to exercise supplemental jurisdiction, the Court affirms the Bankruptcy Court's recommendation that it is appropriate to decline to exercise such jurisdiction over the Non-Core Claims in this case.  As set forth above, pursuant to 28 U.S.C. § 1367(c), a court with supplemental jurisdiction over a claim may decline to exercise such jurisdiction if, among other things, the Non-Core claims substantially predominate over the claims over which the district court has original jurisdiction, as we have here.  There are additional compelling reasons to decline to exercise supplemental jurisdiction here as well.  From a review of the Non-Core Claims, the Bankruptcy Court found many significant infirmities, including, but not limited to, lack of personal jurisdiction, lack of standing to bring federal Rico claims, and failure to comply with the pleading requirements of Rules 8, 9(b) and 12.[33]  In addition, the instant Complaint is a colossal incomprehensible jumble, and the separation of the Core and Non-Core Counts is mandatory for fairness to the parties and the Court.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that all appealed Orders of the Bankruptcy Court

---

[33] *See, e.g.*, DE 1 at 61-65 of 81.  Plaintiffs' Complaint is the quintessential shotgun pleading of the kind the Eleventh Circuit has repeatedly condemned. *Magluta v. Samples*, 256 F.3d 1282, 1284-85 (11th Cir. 2001) (per curiam); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002); *Byrne v. Nezhat*, 261 F.3d 1075, 1128-34 (11th Cir. 2001) (shotgun pleadings . . . impede[ ] the due administration of justice and, in a very real sense, amount[ ] to obstruction of justice) (internal citation omitted).

are affirmed in part and reversed in part as detailed herein.  In refiling their Core

Counts, and a potential new case for the Non-Core Claims, Appellants are advised to

review Rule 11 and consider the Bankruptcy Court's recommendations as to their Non-

Core Claims carefully so that the courts of the Southern District of Florida can

properly rule.  This case is CLOSED.  All pending motions are DENIED as moot.

  **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 9th day of October, 2020.

          KENNETH A. MARRA
        UNITED STATES DISTRICT JUDGE